UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
AUG 17 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-342-GWU

THOMAS EARLEY, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

\* \* \* \* \* \* \* \*

The plaintiff appeals an administrative decision to terminate Disability Insurance Benefits (DIB) benefits originally awarded in 1995. The case is currently before the Court on cross-motions for summary judgment.

**STANDARDS APPLICABLE TO TERMINATION DECISIONS**

When the issue is the termination of benefits, the regulations establish the following eight-step test:

1. Is the beneficiary engaging in substantial gainful activity? If so, then the disability will be found to have ended. See 20 C.F.R. Section 404.1594(f)(1).

2. Provided the beneficiary is not engaged in substantial gainful activity, does the beneficiary have an impairment or combination of impairments which meet or equal the severity of impairments in the Listing? If so, then the disability must be found to continue. See 20 C.F.R. Section 404.1594(f)(2).

1

Earley

3. If the beneficiary does not equal a listing, then the question is whether there has been medical improvement (any decrease in the medical severity of one's impairments, as per 20 C.F.R. 404.1594(b)(1)).

4. Provided medical improvement has occurred, then the question is whether this has produced an increase in the residual functional capacity. If the improvement is not related to the ability to perform work activities, then one proceeds to step 5. If the improvement is related work ability, then one proceeds to step 6. See 20 C.F.R. Section 404.1594(f)(4).

5. Provided there has been no medical improvement or the improvement is not related to work ability, then one must decide whether an exception to the medical improvement standard will apply. If not, then a finding of continuing disability should be made. See 20 C.F.R. Section 404.1594(f)(5).

6. If the medical improvement is found to be related to work ability or if an exception to the medical improvement standard applies, then one considers whether the current impairments in combination are severe. If so, then one proceeds to step 7; if not, the beneficiary is no longer considered disabled. See 20 C.F.R. Section 404.1594(f)(6).

7. If the impairments are found to be severe, then one must assess the beneficiary's ability to engage in substantial gainful activity in accordance with 20 C.F.R. Sec. 404.1561. If found capable of performing past relevant work, then the disability will be found to have ended. Otherwise, one proceeds to step 8. See 20 C.F.R. Section 404.1594(f) (7).

8. Provided the beneficiary cannot perform past relevant work, then one must assess the residual functional capacity and considering the age, education, and past work experience, determine whether other work can be performed. If so, then the beneficiary is no longer disabled. Otherwise, a finding of continuing disability should be made. See 20 C.F.R. Section 404.1594(f)(8).

The standard for judicial review is whether there is substantial evidence to

2

Case: 6:04-cv-00342-GWU Doc #: 17 Filed: 08/17/05 Page: 3 of 5 - Page ID#: 79

Earley

support the Secretary's decision that the plaintiff's condition has improved to the extent that he can perform substantial gainful activity. Casiano, Jr. v. Heckler, 746 F. 2d 1144 (6th Cir. 1984). The Court must determine from the record upon what conditions the claimant was awarded benefits, and whether there has been any improvement in these conditions. Id. at 1148.

## DISCUSSION

The plaintiff had originally been awarded benefits by an administrative decision issued in 1995. No Listing of Impairments section was cited as a basis for the decision (Tr. 46). The plaintiff's "severe" impairments, according to the Administrative Law Judge (ALJ), were musculoligamentous strain of the spine, hypertension, residuals of a right knee injury, depression and anxiety, but did not address the evidence with much specificity. (Id.). Rather, the ALJ noted generally that

> examining physicians basically concur that the claimant's prognosis is guarded and he is neither mentally nor physically capable of returning to employment at this time, particularly without vocational training and further treatment . . .

(Tr. 45) (emphasis added). The Disability Determination Rationale cited the musculoligamentous sprain/strain as the primary diagnosis for the award and depression as the secondary diagnosis. (Tr. 49). None of the original medical or mental health exhibits were contained in the current record, although the agency

3

Earley

obviously had access to the individual exhibits while it was making a determination to terminate benefits at the Disability Hearing Officer stage in 2002. See Tr. 78-79, referring to exhibits from R. Moore, R. Dane, C. Muckenhausen, H. Bushey and G. Rastogi. Obviously, the omission of these records makes any analysis of medical improvement since the Comparison Point more difficult.

Even assuming arguendo that medical improvement has been shown, another problem remains. While the plaintiff was receiving benefits, but prior to the proposed benefits cut-off point, the plaintiff sustained head and musculoskeletal injuries in a three-wheeler accident. A treating neurologist diagnosed a diffuse axonal injury (Tr. 277) with an EMG/NCV showing symmetric sensory polyneuropathy (Tr. 282). According to the neurologist, the patient continued to struggle to be "functional" (Tr.277), but was not expected to regain his baseline mentation (Tr. 394). His treating psychiatrist also diagnosed a bipolar disorder, secondary to the closed head injury (E.g., Tr. 268), with a GAF as low as 50 (Tr. 378), which was consistent with serious symptoms as per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) (DSM-IV), p. 34. A colleague of the treating psychiatrist stated in 2003 that the plaintiff was still unable to work. (Tr. 395). A consultative examiner in early 2001 had also cited a 50 GAF and indicated that cognitive deficits would not be improved with additional treatment. (Tr. 249). This same examiner later saw the plaintiff and still could not rule out that the decline

4

Earley

in intellectual functioning (now with scores <u>meeting</u> a portion of LOI §12.05) was due to the three-wheeler accident. (Tr. 363-364). Clearly, given this information from treating and examining sources strongly suggesting mental disability, at a <u>minimum</u> into late 2003, detailed medical expert testimony was in order before a determination that the plaintiff had a current ability to work.

The decision will be remanded for further consideration.

This the ___17___ day of August, 2005.

_____
G. WIX UNTHANK
SENIOR JUDGE